Good morning, Your Honors. Gregory Yates appearing for the appellants. May it please the Court. I would like to address four basic issues. The rest will stand on our brief unless the Court has specific questions about other issues. The first will be the color of law. You mean there are more than four issues in this case? I think we do, Your Honor. Okay. The first will be the color of law issue as to the individual officers. The second issue would be the Monell issue. The third issue would be supervisor liability on the part of former sheriff. Color of law, pretty much. If you don't get past color of law, you don't pass go or collect $200, right? That's true. That seems about right. That's right. We have two chances, Your Honor. One with the Monell and one with the individual officers. Well, let's talk about the individual officers first. Sure. Okay. I thought you had a question. No, I guess, well, let me ask you the question. You've got a few cops who get in a fight. One makes an insulting remark about the other and they get in a fight. They're at a party. It's a Christmas party, but it's not sponsored. If they got in a fight at the police, so let's take the party out of it for a second. Let's assume it was at the police station. Your clients said whatever they said to the other guys. And as they say in the papers, a scuffle ensued. Under color of state law? Yes. Why? Well, because it has to do with the nature of the act, not whether or not they were on duty. Well, were they purporting to arrest your clients or exercise official authority as to your clients? No. What they were doing is... They were fighting with them. They were... Well, we'll use the word fighting. What's your strongest argument that they were acting under color of law on the evening in question? As to the... Yep. Rather than a hypothetical, under these facts, what's your strongest argument? I mean, they weren't wearing uniforms. You know the laundry list as well as I do. Nobody had badges. What is your strongest argument, that they were acting under color of law? I think it really comes down to... The strongest argument is the fact that they were criticizing the manner in which these group, CLIC we'll call them instead of gang, of deputies were handling bringing down inmates... The insult... Bringing down the inmates to visit. The nature of the insult? The insult was you guys are slow at bringing these guys down to visiting. Yes. So the insult was job related and that's what makes it under color of state law? Absolutely job related. It was certainly related to condoned policy of CLICs. It goes back to the 80s. But no, all he said was, let's just, the statement was, you guys, this is not an exact quote, but it's pretty close. You guys are very slow in bringing down prisoners. I think it might have, there may have been some exclusives. Okay. But yes, you're right. I've deleted exclusives. Any case law that supports the proposition that if it's a comment about how you perform your job, that makes it under color of law? You know, I didn't find a case specifically on point, Your Honor. If I say to Judge Kaczynski, as I never would, you're a terrible judge and he hits me, has he acted under color of state law? He belongs to a CLIC of terrible judges, I tell him. You and your colleagues. I don't like the way this is going. The Kaczynski-Reinhart CLIC are terrible judges and Kaczynski hits me. I'm not sure I like that hypothetical, but I would say, I have to say yes. Color of state law. I think so. Yeah. Because it's under the power of the authority granted and it's only because of your relationship with Judge Kaczynski, criticizing his performance of his job duties. But wouldn't I reasonably understand he was acting in a personal capacity then and not as the, as a senior judge on this court or the former chief judge of this court? Why would I understand that he was exerting official authority? Well, that's one understanding and that's subject to another understanding. That's where the question of fact should have gone to the jury. But I think that even if it's a personal issue, if it's because of the power vested that the pretense is under the authority, you are in the situation with Judge Kaczynski of being in his protégé, his colleague, his colleague, I should say. Protégé. Protégé would be cool. I thought your argument, when I read your brief, I understood this a little differently. Are you changing your argument? I thought your position was that the idea was this was sort of a sponsored event, it was the office, if you will, party, because a captain was retiring and somebody else was coming in and they had been told, your clients claimed they were told it would be good for their careers to go. But that's not what you answered when I asked you what's your strongest argument. I understand that, Your Honor, and that is, I apologize, that is the emphasis of our brief. Well, but there are a lot... What I think the strongest argument is, and I think it's the fact that it comes down to the fact that they were criticized of the manner in which they performed their job. The rest of it fits into, it gives meaning and context to, you know, I do think it's important that it was a yearly event. They were celebrating the incoming new captain. There was no question that there was an element of control exercised by the supervisors over them, albeit... How was their control exercised by the supervisors, by urging them to come? How was their control exercised over them by their supervisors? Well, traditionally in the past, there has been and was because they make speeches about what they're going to do and about how they're going to, as Captain Cruz said in one of the meetings, he said, what do you have to remember? I think it was, don't, not the face, don't hit him in the face. They're talking in those Christmas parties about how they're going to do it. And that's why I asked you the hypothetical at the beginning, because let's assume they were at the station. They're at the cop house. And your client turned to another policeman and said, you're a terrible policeman, expletives, et cetera, et cetera. And the guy hit him. Why is that under color of state law? See, I'm willing to assume for a moment, although I don't think the record supports it, that this was an official event. But so what? So why did that? That doesn't make that doesn't make the violence under color of state law. It's just it's it's workplace violence at the state. And I think, unfortunately, you have a point, Your Honor. It's inextricably tied into. We can't completely separate it from the fact that we have a group of deputies here called the three thousand boys a click. And there's there is the custom and policy as opposed to the quote official. But in the custom and policy, unfortunately, as you allege, the custom and policy is to be brutal to inmates. It is. Is there any custom and policy to be brutal to fellow officers? Custom and policy is more than just to be brutal inmates. It's a custom and policy, longstanding custom policy failure to monitor, trust, train, supervise. You know, but I'm asking a separate question. Is there is there any any evidence of any intra police violence that arises from this click in the past? There there's mention in the commission report and the commission report commission on jail violence, which the judge didn't have at the time. Right. Well, the judge issued his opinion on October 3rd and the commission issued his report. But I mean, just tell me what is there any I think it's a yes or no. Is there any evidence in this record of police on police violence that results from this click? Big reference only in the commission report, not not in the record of not specifically. And that's why, if I may, I come back to the fact that I don't think that is is important. And certainly not in the context of the custom and policy here that relates to the violence, the culture of violence that's going on. I mean, this this department has been subject to the Colts Commission from the early 90s all the way through the 2000s. In 2003, they're warned you can't have these clicks. They have these clicks. Gangs is what they really are. And and yet the supervisors condoned, approved, and even former Sheriff Baca came out and condoned and approved these formed the formation of these clicks because they create a culture of violence. This is a situation that resulted from the culture of violence. Just because someone happened to be, albeit off duty, a police officer, a deputy at a function, and he's the one who's subject to it, he shouldn't be excluded from the consideration of the aftermath of the culture of violence. What do we do with the fact that you're one of your clients through the first punch? Well, you know, there's there's there's two sides to that story. You know, if we have color of law. You know, this question, in fact, that was your client acting under color of law when when. When he did whatever he did, in fact, he one of them. Yeah. One of them. One of them. And I don't. Could the other guy sue him and say you were acting under color of law because you were at a party and this was about official duties and you overreacted? I don't I don't think so. No. So why not? Well, because in this case, again, we come back to it. He wasn't part of it. You know, if you're talking about individual color of law as to the individual officers, I would say no. You're talking about color of law as to the culture of violence. I would have to say yes. But to turn. I want to start throwing the first punch. I mean, the reality of it is, though, my client was not a member of a gang. But, yeah, turn the facts around. That's what that's the difference. Turn the facts around. Do you have this discussion? Your client, at least from the point of view of the other guy, unreasonably throws the first punch, hits him and hurts him. Right. Your client, your client hasn't acted under color of state law because he's not part of a culture of violence. But the other guy, if he throws the punch, has acted under color of state law because he's part of a culture of violence. Is that the answer you would give me to that question? I would give you the explanation as to why, which is that the member of the 3000 group was a clique. And this was a response to an objection to the actions of that clique. So the culture of violence permeates not only those individuals that are in the clique, but also my clients. They're a member of a culture of violence. Yes. But was that act a proximate cause by my clients of that culture of violence? I would say in these factual circumstances, not. So they both recover from Sheriff Barker and then they go out and have a party. They both recover from Sheriff Barker and the county, right? Right. I mean, it's a mess. Maybe this court can change things. This has been going on for three decades. It's a horrendous mess. They've had monitor after monitor. They've had a special counsel. I must say between Officer Lee in the prior case and the plaintiffs and defendants in this case, I can't say that the Sheriff's Department has covered itself with glory today. Anyway, you're out of time. We need them. They're a wonderful, wonderful institution, but they need some help. Thank you, Your Honor. Okay. We'll hear from the police. Good morning. Good morning, Your Honor. Paul Beach for Defendant Lee Baca and the County of Los Angeles. The deputy defendants are represented separately. To answer Your Honor's question, the question was in response to what's the best evidence of color of law, the work-related insult, I believe that that is not sufficient. I believe that's covered by the Hughes case cited in our papers and which was cited by the district court judge below. In response to Your Honor's inquiry as to whether or not there was evidence in the record of violence by this clique of deputies, the answer is no. With regard to- Is that because this report, the citizenry report came out after the district court had ruled or is your answer that you think there isn't evidence in the citizen's report? There's not evidence as to these gentlemen, the individual defendants. There's not evidence as to them. In the court's ruling on the motion for new trial, the district court's ruling on the motion for new trial, first it denied the motion because of failure to comply with the local rules in the court's standing order, and that issue was not briefed in this court, so it's been waived. The actual basis for the denial of that motion- It's a different response, though, to tell me that you think that that wasn't in the record and wasn't properly considered than it would be if your response is to tell me that you think that the citizen's report doesn't give one cause for pause about whether there's a culture of violence in the Sheriff's Department. With regard to these individuals, and that's what we were talking about- Because he doesn't name the individuals. He's talking about a culture of violence, counsel, so you know what I'm asking. Yes, and what I was going to say is on the motion for new trial ruling, the court went into, then looked at the CCJV report- Right. And said that these people were not discussed- But there was- These individuals were not. Yes. So what is your response, given that opposing counsel's position is that there's a culture of violence, it doesn't need to name individual officers? What's your response to that? Well, first of all, I don't believe that on summary judgment there was competent evidence of a culture of violence, but as the district court judge explained in its ruling, here they were essentially relying upon a practice theory, that was the plaintiff's theory, and they had not put forth evidence of a practice of violence by deputies against deputies, and looking at the Van Ork opinions and other rulings from the Ninth Circuit, it didn't bring it under the color of violence. Well, there was sufficient evidence here. I'm not sure it was enough to get to the jury, but there was evidence that these 3,000 deputies, if you will, had a reputation and some practice of acting in an aggressive fashion, I want to be politically correct, towards inmates. Correct? There was that assertion in the CCJV report which came in on the motion for new trial. Okay. Didn't the plaintiffs provide declarations or affidavits or depositions to the effect that we knew about this reputation and this is what these guys do? I don't remember. I'm sorry. It seems to me that if you're tagging this on whether there was any evidence that these guys were bad apples, then you're in trouble. The real question is whether these bad apples were acting under color of state law, isn't it? Absolutely, Your Honor. Okay. That's different. So my question is... What you said initially and the reason you're having this uncomfortable few minutes is because you said there isn't any evidence of this culture of violence. And the record, I agree with Judge Hurwitz, there is. Different question about whether or not there's evidence here sufficient at the summary judgment stage to show that these folks were acting under color of law. I think as Your Honor has pointed out at the very beginning of the argument of this case, this case turned on the color of law. Okay. And now you get me to the question I wanted to ask you before you went in a different direction. At what point does the county, the sheriff, become liable for having out there some, I'll use bad apples, you know, and who are violent? What point do their actions that might otherwise be viewed as private turn into state law actions? It would arise based on the classic adjudication by this court over and over again, whether the individuals were on duty, whether they were in uniform, whether they displayed badges, whether they were following a policy of the department. Well, but let me give you a hypothetical, and it's a hypothetical, so you don't have to tell me it's not the facts of this case. The sheriff knows that he's got a deputy who loves to beat up people, does it all the time. The sheriff takes no action. That deputy goes to a party with another deputy. The deputy says, one says to the other, you're a terrible cop, and the guy who the sheriff knows likes to beat up people beats him up. Not under color of state law? I don't believe so. If it happens at the station house, is it under color of state law? No, because, again, it would not be, that was not the purpose for which the person was retained. Presumably that's not part of their job. Yeah, but killing innocent civilians, to take a different example, was not the purpose for which somebody is retained, but we find all the time that policemen act under color of state law when they engage in excessive force. Well, no doubt, Your Honor, if a police officer responds to a call for service and in the event shoots someone and kills them and it's deemed to be unreasonable, that person is on duty, in uniform, trying to, now he may be wrongfully, trying to discharge his duties, and that would be under color of law, but it would still, and the county would be responsible for that. So I guess Judge Christin asked your opponent what his strongest argument was. Your strongest argument is that they weren't really on duty at the time? No, it's many things. It's that they were not actually discharging a policy of the department. They were actually acting contrary to the policy of the department. They were not on duty. This was entirely a private event. That was on the court, the district court below exhaustively examined the color of law analysis. Did they have their service weapons and badges with them? No, Your Honor. There was no. It's in the record? The record shows one way or the other whether they did or not. I believe the record shows that there was no, there were no badges and no guns. In civilian clothes. Everyone is in civilian clothes. I find that hard to believe. Aren't deputies required to carry badges and guns with them even when they are not on duty? LAPD are. I believe this. But, you know, I'm asking you what's in the record, and you tell me affirmatively there's evidence that they did not have service weapons and badges with them. If you don't know, you don't know, but I'm just asking. I want to be very, I want to be very. I want you to be very. Whatever you're going to do, be sure it's very. I'm certain that the record is that no one displayed, everyone was in civilian clothing. Don't answer a different question than the one I asked. The one I asked is does the record show whether they had their guns, their service weapons, and their badges with them? Is the record silent or does it affirmatively exclude that? The record affirmatively states that no badges were displayed by anyone. Don't answer the question, a different question than I asked. Okay? You're just wasting time. You're wasting my time, and that does not help your client's case. Do you understand the question I asked? Yes. Okay. Repeat the question just so we know we're on the same page. Does the record show whether anyone had on them. The deputies there. Whether they had badges and guns on them. Exactly. The answer is yes, no, I don't know. You know, I don't know is perfectly acceptable if you don't know. I don't believe it does. The court's order. You don't believe the record shows anything? Correct. I believe that the record, because this was developed, because it was on the color of law argument, which was whether anyone was. Displayed a badge. Displaying. That one you've answered. Indicia, et cetera. That one you've answered. But the question. The court's order says that they were neither in uniform nor wearing badges, but I don't see anything about guns, which is I think where Judge Kaczynski started. Whether they had their service revolvers with them. Well, there's a wearing of badges, and there's also carrying a badge in your pocket. And my understanding is that at least for LAPD, at least in the past year, I don't know if the policy continues. And I assume the sheriffs, too, that when they're off duty, they're supposed to carry their badges and weapons. And so if they get in an emergency situation, even as a civilian, you know, they walk into a convenience store and there's a holdup going on, they can then on the spot exercise their authority by showing a badge and pulling a gun if necessary. If this is not the case, I mean, the reason I'm asking this question is the question is if you have a cultural violence, which sounds to me like you've pretty much conceded. You shake your head, but you haven't finished. You don't know what I'm going to say. You've pretty much conceded that's a fact in dispute as to which you can't get summary judgment. You still want to shake your head no? Okay. So we have to take that as a possible. So if there is a cultural violence which is in play, then the question becomes if you have sheriff deputies running around carrying badges and guns, even when off duty, do you then, the spillover from this cultural violence, create a situation where when they do stuff like that, it becomes an extension of their job? That's why I'm asking the question. Whether deputies while off duty are required to carry their guns on them is not in the record, but based on my 15 or some odd years. You're going to testify now? Not in the record is probably the end of the answer, right? Thank you. It's not in the record, and it's not in the record. There we go. I was going to have you raise your hand and administer a notice if you're going to testify. No, no. Thank you. And I think the color of law issue was very well briefed and examined by the district court in its ruling with regard to the state law claims. Multiple grounds were raised for the disposition of the state law. Let me impose another hypothetical to you. Let's say, for example, let's assume now, because we have to get into the circuit, that there is a culture of violence, and what's going on is these clerks have a way of retaliating against people who are not in the clerks and who tend to undermine their authority, and so they go to somebody's house. A bunch of them go to somebody's house and beat up the deputy's son or beat up the deputy or something, and tell him, you know, you keep expletive deleted with us and it's going to be much worse. Now, take that hypothetical. So you've got a culture of violence, which we sort of take as a given here, and then in order to enforce that, in order to enforce this arrangement, they go and they do things outside the job. Is that, would that be under color of law? I don't believe so. You don't think so? No. But you're not sure? I'm pretty sure. Pretty sure? Yeah. Okay. You're not going to split time, right? No, Your Honor. I've gotten three minutes over my time. Thank you. Okay. Thank you. I don't remember if you had any time left, but we'll give you a minute to rebuttal in any event. I have no rebuttal. As Satchel just would ask, there was one on the 11.02 argument. It could take literally 15 seconds to point something out. You've got a minute. Thank you, Your Honors. After the case was briefed, in fact, in late September, October of 2013, Labor Code Section 244A was enacted, which clarified the 11.02.5 statute to interpret it that it did not require administrative remedy exhaustion in order to file an action under 11.02.5. Does it require color of state law? 11.02.5? Yeah. Mr. Smith, who's ill today, was going to address that subject. Quite frankly, I don't know. Oh, that's good. Thank you. Thank you. Thank you. Okay.
judges: Kozinski, Christen, Hurwitz